COPELAND v. MARTIN.†

(Circuit Court of Appeals, Fifth Circuit. November 2, 1910.)

No. 2,056.

BANKRUPTCY (§ 116*)—JURISDICTION OF BANKRUPTCY COURT—SUMMARY PROCEEDINGS AGAINST ADVERSE CLAIMANT.

The holder of an assignment of money due a bankrupt from a third person at the date of the bankruptcy is an adverse claimant, and the bankruptcy court is without jurisdiction by a summary proceeding to require him, over his objection, to submit his claim to the money to such court for decision.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

Petition to Superintend and Revise from the District Court of the United States for the Northern District of Alabama.

In the matter of Clifton Martin, bankrupt. Petition by H. J. Copeland to revise an order of the District Court. Order reversed.

Wallace T. Ward, for petitioner.

V. J. Nesbit, for respondent.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied November 29, 1910.

PARDEE, Circuit Judge. The transcript shows that on July 6, 1909, the above named, Clifton Martin, was duly adjudicated a bankrupt. Upon the adjudication of bankruptcy, the referee in bankruptcy, apparently of his own motion before any trustee elected or even any debts proved, issued a citation to the Alabama Great Southern Railroad Company to appear before him to show cause why it should not pay into the registry of the court any and all money due to the bankrupt or show cause why it should not do so.

In response to said order, said railroad company, by and through its agent, H. M. Pitts, made answer to the referee that it was indebted to the bankrupt in the sum of $71.80, which it held under an assignment to one Hal J. Copeland. Thereupon said referee in bankruptcy, apparently without any suggestion from any source, issued a rule nisi to the above-named H. J. Copeland as follows:

"In the District Court of the United States for the Southern Division of the Northern District of Alabama.

"In the Matter of Clifton Martin, Bankrupt.

"In the above-entitled cause, it appearing to the court the petition of the bankrupt set out as assets of his estate the sum of $73.10 due to him for wages earned during the month prior to the filing of the petition in bankruptcy; and it further appearing to the court from the answer of the Alabama Great Southern Railroad Company that at the time of the filing of said petition in bankruptcy it was indebted to the said bankrupt in the sum of $73.10, which said sum of money is being held by the said railroad company on account of an alleged assignment of wages held by Hal J. Copeland: it is ordered, adjudged, and decreed that the said Hal J. Copeland be and appear before me at 2 o'clock, July 22, 1909, at my office in the Government Building, Birmingham, Ala., and show cause, if any he has, why he should not propound his claim to this fund in this court of bankruptcy. Ordered that John Trimble may make service of this order by sending or handing copy of same to H. J. Copeland.

"[Signed]                    Alex C. Birch, Referee in Bankruptcy."

On said July 22, 1909, said H. J Copeland made a special appearance in answer to said rule nisi, objecting to the jurisdiction of the bankruptcy court to proceed against him summarily, and setting up the fact that he was the assignee of the money in the possession of said railroad company, and alleging that he had paid a valuable consideration therefor.

After hearing the evidence, said referee made an order requiring said Copeland to forthwith dismiss the said assignment proceeding against the said railroad company, and propound any claim he had against said fund or the bankrupt in no other forum than in the bankruptcy court. Said referee further ordered that said Copeland be restrained and enjoined from any attempt to collect the sum due by the bankrupt by filing or holding any assignment of future wages with the railroad company pending the final discharge of the bankrupt. Said referee further ordered said railroad company to forthwith pay into the registry of the court the sum of money answered due the bankrupt for his June wages, and pay to the bankrupt wages earned by him subsequent to his adjudication. Said order was dated August 13, 1909. Within five days thereafter, said Copeland filed a petition with said referee praying a review of the order and proceedings in said cause before the honorable District Judge, therein insisting that the referee was without jurisdiction to proceed summarily.

The said proceedings with a transcript of the evidence, and an opinion of the referee in bankruptcy, was by said referee certified to the district judge for a review. The certificate shows that the referee found the following to be facts:

"First. The referee finds that the bankrupt executed the alleged assignment of wages dated May 14, 1909, and marked 'Accepted service, May 14, 1907,' the original of which instrument is transmitted to the District Judge.

"Second. The referee further finds that H. M. Pitts, as agent of the Alabama Great Southern Railroad Company made the indorsement on said assignment, although his authority for so doing was not sufficiently shown on the hearing.

"Third. The referee further finds that the bankrupt executed the alleged assignment dated June 15, 1909.

"Fourth. The referee finds that the indorsement of the assignment of June 15, 1909, was made by H. M. Pitts, the garnishment clerk of the Alabama Great Southern Railroad Company, although his authority to make such indorsement is not clearly shown by the evidence.

"Fifth. The referee further finds that on July 6, 1909, being the day of which he was adjudicated a bankrupt, the bankrupt had wages to the amount of $71.80 due him by the Alabama Great Southern Railroad Company.

"Sixth. The referee further finds that on June 15, 1909, the Alabama Great Southern Railroad Company was indebted to the bankrupt in the sum of $19

"Seventh. The referee further finds that between June 15, 1909, and July 1, 1909, the bankrupt purchased groceries from the respondent amounting to $20.35; and that he procured the following sums of money from the respondent subsequent to June 15th, namely, $30 on June 15th, $9 on June 29th, $2 on July 2d, and $3 on July 6th.

"Eighth. The referee further finds that on June 15, 1909, the bankrupt settled in full with the respondent and executed a new instrument to be the basis of future supplies and loans.

"Ninth. The referee further finds that on May 14, 1909, and June 15, 1909, H. J. Copeland was engaged in the business of lending money in Jefferson county; and that he charged the bankrupt interest at the rate of 20 per cent. per month on all loans of the sums of money advanced to the bankrupt under the instruments which purport to be assignments of wages executed by the bankrupt on May 14th and June 15th in favor of the respondent; and that such instruments are void under the local money lenders' act, in that the true rate of interest is not shown, and it does not appear therein that the instrument was given to receive a loan, and because a copy of the instrument was not furnished the borrower, and because such instrument was not recorded in the probate office within five days of its execution.

"Tenth. The referee further finds that, in the course of his dealing with the bankrupt, which extended over the period of the past 18 months, the respondent would cash the pay check of the bankrupt, after the same had been indorsed by the bankrupt, to whom it was payable, and, after deducting the amount due for groceries and loans and the charges, profits, or interest on such loans, would turn over the balance, if any, to the bankrupt; and that such was his course of dealing with a large number of other railroad employés who traded with him.

"Eleventh. The referee further finds that the respondent had no assignment of wages on the June time of the bankrupt; the assignment of May 14th having been discharged by a settlement on June 15th, and the execution of new assignment covering the July wages on that day.

"[Signed]           Birch, Referee."

On December 2, 1909, the matter was heard before the honorable district judge, and the petition for the review of the above-named H. J. Copeland was denied and dismissed with costs. On December 11, 1909, said Copeland filed with the district judge a petition to superintend and revise the order and decree rendered by the honorable district judge in this cause, and along therewith an assignment of er-

ror, complained of on such review. The cause comes to this court on such petition for review.

There are 23 assignments of error. Eleven of them raise the question of the jurisdiction of the referee in bankruptcy and of the bankruptcy court to proceed summarily, and the others question rulings of fact and law. If the court had jurisdiction, the finding on the facts by the referee may be conclusive on this petition to review, and it therefore seems that the material question to be decided is that of jurisdiction.

According to the authorities, Copeland, having no property of the bankrupt in his possession, and having no claim against the bankruptcy estate and asking nothing from the bankruptcy court, but claiming money in the hands of the railroad company, to which he claims the right and title by assignment from the bankrupt, was an adverse claimant. The amount invoked cuts no figure. Copeland, being an adverse claimant to the money, is not amenable to the order of the referee that he appear before him on a day named and show cause "why he should not propound his claim to the fund in this court of bankruptcy." The trustee in bankruptcy, if there be one, may for the benefit of the creditors, if any, bring a plenary suit, in a court of competent jurisdiction, to contest said Copeland's right to said money. A recovery in such suit would be for the benefit of the creditors and not for that of the bankrupt.

We notice that the Alabama Great Southern Railroad Company made no objection to the summary proceedings, and apparently does not object to the forthwith order of the referee to pay the bankrupt's wages earned before and after the adjudication into the registry of the court; but as Copeland's interests would be affected by compliance with such order, and as the order goes further than a judgment for money, and was probably intended to be enforced by summary proceedings, the whole order is objectionable as irregular and unwarranted.

The decree of the lower court is reversed, and the case is remanded, with an order to dismiss the summary proceedings instituted in this cause.