In re INTEROCEAN TRANSP. CO. OF AMERICA, Inc.

Ex parte LEWIS.

(District Court, S. D. New York. March 7, 1916.)

1. BANKRUPTCY ⊂⊃20(1)—JURISDICTION OF COURT—ADVERSE CLAIMS.
    Claims asserted after bankruptcy by third persons to a fund placed by the bankrupt in possession of a custodian having no claim thereto, arising out of transactions before the bankruptcy, are adverse, and the court of bankruptcy is without jurisdiction to determine the same, except by consent.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 1331; Dec. Dig. ⊂⊃20(1).]

2. BANKRUPTCY ⊂⊃18½, New, vol. 8 Key-No. Series—LIENS—SUIT TO ENFORCE—MARITIME LIEN.
    Where a maritime lien is claimed on property of a bankrupt, and a suit in admiralty brought for its enforcement, the better practice is to permit the trustee to intervene in such suit and have the question there adjudicated.

3. BANKRUPTCY ⊂⊃20(1)—POWERS OF COURT—STAY OF SUIT IN STATE COURT.
    A court of bankruptcy is without power to stay a suit in a state court for money had and received, brought against a third person, who as a stakeholder has possession of a fund also claimed by the trustee in bankruptcy.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 1331; Dec. Dig. ⊂⊃20(1).]

In Bankruptcy. In the matter of Interocean Transportation Company of America, bankrupt. On motion by Robert P. Lewis, receiver in bankruptcy, to stay suits in a state court and in a court of admiralty. Motions denied.

The facts in this case are as follows: Palin, Evans & Co., Limited, the libelant in admiralty, chartered the ship Brinkburn to the Hellenic Transatlantic Steamship Company, the plaintiff in the action in the state court, on a time charter, reserving a lien on subfreights. The Hellenic Transatlantic Steamship Company subchartered the Brinkburn to the Interocean Transportation Company, the bankrupt, who in turn chartered her to H. Baars & Co., who paid the proper balance of freight, some $25,500, to the captain of the Brinkburn. Meanwhile the bankrupt had borrowed from the Equitable Trust Company $20,000 on its note, giving as security an as-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

signment of its claim under the charter party against H. Baars & Co. The captain paid the freight to a Florida bank to the credit of the Equitable Trust Company, which later, after some local legal proceedings not necessary to state, remitted to the Equitable Trust Company, which applied enough out of the fund to pay its loan, enough to pay the broker's commission, and now holds the balance, $3,648.89, subject to the claims of whom it may concern.

The petition in bankruptcy was filed on September 17, 1915, and a receiver appointed. Soon thereafter the Hellenic Transatlantic Steamship Company gave notice to the Equitable Trust Company of a claim to the fund arising from the alleged fact that the captain of the Brinkburn was by agreement to pay the freight to it, paying the bankrupt only the difference between the freight due it from H. Baars & Co. and the freight due the Hellenic Transatlantic Steamship Company on the subcharter to the bankrupt itself. This amounted to nothing, as the Hellenic Transatlantic Steamship Company asserted, because of the consent of the bankrupt to a violation of the charter by H. Baars & Co. Moreover, Palin, Evans & Co., Limited, also laid claim to the moneys against the Equitable Trust Company by virtue of its alleged lien for subfreight. In this posture of affairs the receiver served on the Equitable Trust Company a notice of motion, returnable before the referee for an order, directing the respondent to pay the money to the receiver; the motion being returnable on December 1, 1915. Before the return day Palin, Evans & Co., Limited, filed its libel and attached the fund by service of a marshal's notice on the Equitable Trust Company, and on the return day the Hellenic Transatlantic Steamship Company served the Equitable Trust Company with a summons and complaint in the state court for money had and received on a demand and refusal. The proceeding before the referee is still pending undecided. The receiver now makes a motion to stay the action in the state court, and a second motion to vacate the attachment in admiralty and to stay those proceedings.

Charles I. Greenhall, of New York City, for receiver.

Kirlin, Woolsey & Hickox and Cletus Keating, all of New York City, for Palin, Evans & Co., Limited.

Bernard Fliashnick, of New York City, for Hellenic Transatlantic S. S. Co.

Murray, Prentice & Howland, of New York City, for Equitable Trust Co.

LEARNED HAND, District Judge (after stating the facts as above). [1] On November 24, 1915, when the notice of motion was served by the receiver upon the Equitable Trust Company, it held a fund upon which it had no claim and against which there had already been made two adverse claims. Each of these arose from circumstances existing before petition filed, which distinguishes the case from Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, where the purchaser of the assignee for creditors had bought after petition filed. The question, therefore, is whether claims made after petition filed, but arising before that time, constitute adverse claims, when the fund is in possession of one who makes no adverse claim. First National Bank v. Chic. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, seems to be directly in point. In that case the bankrupt had seed in storage with a warehouseman, whose receipts he had pledged. The warehouseman had no claim on the seeds, but did have possession. The Supreme Court decided that the District Court had no jurisdiction to determine the validity of the pledgees' claims. It is

true that in Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157, Mr. Justice Day says that the jurisdiction exists whether the property is held by the bankrupt, "or for him"; but he mentions First National Bank v. Chic. Title & Trust Co., supra, and distinguishes it, because the District Court was not in possession of the fund. I have looked with some care for any case holding that an adverse claim against property in the possession of a stakeholder is not enough to forbid summary jurisdiction of this court, and I can find none. On the other hand, in the similar case of a claim by assignment of a chose in action the rule is against jurisdiction. Copeland v. Martin, 182 Fed. 805, 105 C. C. A. 237; In re Driggs (D. C.) 171 Fed. 897. I therefore conclude that there is no jurisdiction to determine in this proceeding the claims of Palin, Evans & Co., Limited, or of the Hellenic Transatlantic Steamship Company.

[2] There is another ground quite as conclusive, so far as concerns the claim of Palin, Evans & Co., Limited, which is that they assert a maritime lien which cannot be discharged or adjudicated, except in the admiralty (Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981), a rule equally applicable between a federal court sitting as a court of admiralty and the same court sitting in any other capacity as it is between the admiralty court and a state court (Hudson v. N. Y. & Albany Transport. Co., 180 Fed. 973, 104 C. C. A. 129). Possibly the bankruptcy court might enjoin all proceedings in admiralty until the bankruptcy was over, but that would be an idle thing to do in the case at bar, since the maritime lien of Palin, Evans & Co., Limited, would remain, and no final disposition of the res could be had till it was terminated. A much better way is for the receiver or trustee to intervene in the admiralty proceedings and claim the bankrupt's right there. In view of the length of time which has elapsed since the adjudication, I will not issue any stay to run until a trustee is appointed, assuming, which I do not, however, decide that only a trustee can intervene in the admiralty proceedings.

[3] Coming now to the motion against the Hellenic Transatlantic Steamship Company, what I have already said at the beginning is sufficient to settle the matter of any permanent stay, and I will give no temporary stay until a trustee is appointed for the reasons just given. There is, however, another reason against any stay. Even if this were an action against the receiver himself, this court would not issue any stay. In re Russell, 101 Fed. 248, 41 C. C. A. 323; In re Kanter & Cohen, 121 Fed. 984, 58 C. C. A. 260; In re Spitzer, 130 Fed. 879, 66 C. C. A. 35; In re Mertens & Co., 147 Fed. 182, 77 C. C. A. 478. These cases establish the doctrine that, even when the receiver or trustee is in possession of goods, formerly the bankrupt's, his title may be tried in the state court by the simple expedient of avoiding any possessory action and suing in conversion. Doubtless it is true that when, after his appointment, he meddles with the property of others, he is liable to action. Hebert v. Crawford, 228 U. S. 204, 33 Sup. Ct. 484, 57 L. Ed. 800. But these cases go further, and allow his mere refusal to surrender possession to be regarded as a tort for which he may be sued elsewhere. Since this is binding law for me, it must be ap-

parent that a fortiori I may not stay the prosecution of an action for money had and received against a third person, who is a stakeholder. The trustee, when appointed, may commence such an action on his own account, if he does not care to intervene in the admiralty. How the Equitable Trust Company is to protect itself in the unpleasant emergency which will result is not a question of bankruptcy.

Both motions are denied.