## In re GOLDMAN.

District Court, S. D. New York.
Nov. 9, 1933.

Charles Seligson, of New York City, for trustee.

Max Rosner, of New York City, for claimants.

974

PATTERSON, District Judge.

The motion is by the trustee in bankruptcy of Henry Goldman to restrain Oppenheim and others from proceeding further with a suit commenced in the state court and to require Rhodes to deliver to the trustee certain shares of stock held by him.

It appears that the bankrupt had brought suit against Oppenheim and others. In settlement of that suit an agreement was made on September 15, 1932. One of the terms of the settlement was that 25,000 shares of Television stock were to be delivered to Rhodes, to be held by him in escrow for the bankrupt's benefit and account. These shares were to be turned over by Rhodes to the bankrupt at the expiration of one year, except such shares as might be sold in the interim under certain prescribed conditions and as to these the proceeds of sale were to be paid to the bankrupt. The 25,000 shares were accordingly placed with Rhodes, who still holds them. The bankrupt filed a voluntary petition on April 25, 1933.

On September 13, 1933, two days before the time fixed for delivery of the shares by Rhodes, Oppenheim and other parties to the agreement commenced a suit in the state court against the bankrupt and Rhodes. In the suit they allege that they were induced to make the settlement by the bankrupt's fraudulent representations; the relief sought is rescission of the agreement and restoration of the 25,000 shares of stock held by Rhodes. The present application is to compel Rhodes to deliver the shares to the trustee in bankruptcy (as to which Rhodes makes no opposition) and to restrain the Oppenheim group from pushing their suit in the state court, permitting them, of course, to make their claim to the shares in the bankruptcy court. The Oppenheim group resists the application and disputes the jurisdiction of the bankruptcy court.

The case then is one where property was held in escrow for the bankrupt at the time when the petition was filed and where subsequently other persons commence a suit in the state court setting up an equitable right to the property as against the bankrupt. There can be no doubt that under such circumstances the bankruptcy court has the power to order the property to be turned over to the trustee and to stay further proceedings by the adverse claimants in the state court.

 Property held for the bankrupt by another who makes no claim to it may be summarily collected by the bankruptcy court, despite the fact that third persons make claims adverse to the bankrupt. Orinoco Iron Co. v. Metzel (C. C. A.) 230 F. 40; In re Hoey, Tilden & Co. (D. C.) 292 F. 269. See also Buss v. Long Island Storage Warehouse Co. (C. C. A.) 64 F.(2d) 338, 339. This is on the theory that the bankruptcy court came into constructive possession of the property when the petition was filed, and as to property in its possession the court may determine the rights of claimants in summary proceedings. The shares of stock held by Rhodes for the bankrupt's benefit have therefore been in the constructive custody of the court and subject to its orders since the commencement of the bankruptcy proceeding. Rhodes should be directed to deliver the property to the trustee. By the same token the persons who subsequently commenced suit in another court to obtain the property should be restrained. O'Dell v. Boyden (C. C. A.) 150 F. 731, 10 Ann. Cas. 239; In re Hoey (C. C. A.) 290 F. 116. The custody of the bankruptcy court is prior in point of time and draws to that court all controversies over the property.

The respondents rely on In re Interocean Transportation Co. (D. C.) 232 F. 408. The value of that case as a precedent, however, has been greatly impaired, if not altogether destroyed by the later opinion of the judge who decided it in Re Hoey, Tilden & Co., supra.

The application will be granted in all respects.