In the Matter of EQUITY FUNDING
CORPORATION OF AMERICA, a
Delaware Corporation, Debtor.

No. 73-03467.

United States District Court,
C. D. California.

April 11, 1975.

O'Melveny & Myers by Everett B. Clary, A. Robert Pisano, Los Angeles, Cal., for trustee.

Grant G. Guthrie, Washington, D.C., and Richard Castro, Los Angeles, Cal., for S.E.C.

Shearman & Sterling by George J. Wade, New York City, for First National City Bank, as agent.

Whitman & Ransom by Dugald Campbell Brown, New York City, and Irell & Manella by Richard L. Bernachi, Joan L. Lesser, Richard M. Sherman, Jr., Los Angeles, Cal., for U. S. Trust Co. of New York, successor indenture trustee for 5½% convertible subordinated debentures due 1991.

McCutchen, Black, Verleger & Shea by G. Richard Doty, Roger A. Ferree, Los

Angeles, Cal., for Chemical Bank, indenture trustee.

Corinblit & Shapero by Jack Corinblit and Schwartz, Alschuler & Grossman by Marshall B. Grossman, Los Angeles, Cal., and Kirsch, Arak & Bulmash by Jay S. Bulmash, Beverly Hills, Cal., for Certain Class 8 Creditors.

MEMORANDUM AND ORDER GRANTING TRUSTEE'S APPLICATION TO ENJOIN PROSECUTION OF CERTAIN ACTIONS AGAINST DEBTOR'S SUBSIDIARIES

PREGERSON, District Judge.

These proceedings commenced when the debtor, Equity Funding Corporation of America (hereinafter referred to as "EFCA"), filed its petition for reorganization under Chapter X of the Bankruptcy Act on April 5, 1973. 11 U.S.C. § 501 et seq. The proposed plan of reorganization, filed by the trustee on October 24, 1974, contemplates the formation of a new company (hereinafter referred to as "New Company") whose primary assets would be all the stock of Bankers National Life Insurance Company (hereinafter referred to as "Bankers") and Northern Life Insurance Company (hereinafter referred to as "Northern"). Most of the debtor's remaining assets would be sold or converted into cash. EFCA's secured creditors comprise four banks (hereinafter referred to as the "Revolving Credit Banks") that claim approximately $50,500,000 in principal against the debtor and allege that the stock of Bankers and Northern was pledged as security for this debt. Under the terms of the proposed plan, the Revolving Credit Banks would receive approximately $8,000,000 in cash, $15,000,000 either in cash or in "Senior Secured Notes" of New Company, and approximately $27,500,000 in "Senior Secured Income Notes" of New Company. All of these notes would be secured by the stock of Bankers and Northern. The Revolving Credit Banks presently constitute the Class 4 Secured Creditors

under the proposed plan of reorganization. Most of debtor's unsecured creditors have been placed in Classes 6 ("General Unsecured Unsubordinated Creditors") and 7 ("Holders of Subordinated Debt Instruments") and would receive stock of New Company in return for the compromise of their claims. The debtor's present and former shareholders and holders of other securities of the debtor with allowable fraud claims would be considered as Class 8 Creditors ("Fraud Claimants") for purposes of the proposed plan and would receive stock of New Company in payment for these claims. These claims are predicated upon violations of the federal securities laws and upon common law fraud. Since the fraud claimants are provided for in the proposed plan of reorganization, the plan states that its confirmation would be conditioned upon the settlement and dismissal of all pending actions by them against the debtor and its subsidiaries.

Apart from these reorganization proceedings, numerous individual and class actions have been instituted, primarily against Bankers, by present and former security holders of EFCA. At the present time, the bulk of these actions are pending before U.S. District Judge Malcolm M. Lucas of the Central District of California in multi-district litigation proceedings. In re Equity Corporation of America Litigation, Jud.Pan. Mult.Lit., 396 F.Supp. 1277 (hereinafter referred to as "MDL proceedings."). For the most part, claimants in these actions allege that Bankers participated in the same fraud that supports the Class 8 fraud claims against the debtor in the Chapter X proceedings here. The Class 8 claimants estimate the amount of these claims to be in excess of $200,000,000.

During December 1974 and January 1975, this court held hearings to determine whether the proposed plan of reorganization is "fair and equitable, and feasible." Bankruptcy Act § 221(2), 11 U.S.C. § 621(2). The trustee introduced

expert testimony during these hearings which tended to show that, as of December 31, 1973, Bankers and Northern each had a value in the range of $40,000,000 to $45,000,000. This testimony was offered not only to prove that the plan was fair, equitable, and feasible but also to determine the value of the Revolving Credit Banks' alleged security, under Section 197 of the Bankruptcy Act. 11 U.S.C. § 597. In estimating the value of Bankers, the experts did not consider the claims against this subsidiary in the MDL proceedings because the proposed plan envisioned the settlement or other disposition of these claims.

In his present application, the trustee requests this court to enjoin certain narrowly described claims against EFCA's subsidiaries in the MDL proceedings, as well as in other proceedings, and to assert its summary jurisdiction under Chapter X to determine the validity of those narrowly described claims in this court. In brief, the requested relief applies only to a claim (1) which seeks recovery against a subsidiary of debtor (other than Equity Funding Life Insurance Company, hereinafter referred to as "EFLIC"), (2) which is based upon damages allegedly suffered from an investment in the debtor, (3) which is based upon the alleged participation by such subsidiary as an aider, abettor, or conspirator, in the EFCA fraud, and (4) which arises out of action taken by the subsidiary at the direction of a person who was at that time an officer or employee of the debtor.[1] This injunction would prohibit the prosecution of any and all claims against any subsidiary of EFCA, except EFLIC, in any court other than the reorganization court, which

meet the above description (hereinafter all such claims will be referred to as "described claims"). In the exercise of its summary jurisdiction under Chapter X, the court would then hear and determine these described claims. Accordingly, the court must determine whether it has jurisdiction under the Bankruptcy Act to enjoin the described claims against EFCA subsidiaries in the MDL proceeding as well as in other forums, and to hear those claims in the present Chapter X proceeding. (Since most of the actions against EFCA's subsidiaries have been consolidated in the MDL proceedings, the court will refer to all pending proceedings against these subsidiaries, whether in or out of federal courts, as "MDL proceedings" for purposes of brevity.)

The trustee and those parties who support his application have posited two theories for the assumption of jurisdiction. First, they maintain that under the circumstances of this case and for purposes of Chapter X jurisdiction over the described claims only, the subsidiaries of EFCA are *alter egos* of the debtor-parent and therefore constitute "property" of EFCA within the meaning of Section 111 of the Bankruptcy Act. 11 U.S.C. § 511. Second, they argue that a bankruptcy court has inherent jurisdiction primarily arising from Section 2(a)(15) of the Bankruptcy Act (11 U.S.C. § 11(a)(15)) to adjudicate those controversies which would frustrate reorganization or prevent the plan of reorganization from proceeding, if jurisdiction were not assumed. The court will discuss each of these theories separately.

---

1. More specifically, the trustee seeks to enjoin any claim which has all of the following characteristics:

 (a) The claim is based upon or arises out of (i) the acquisition or retention by the claimant of a note, share of stock, or other security issued or guaranteed by EFCA, or (ii) the extension of credit by the claimant to EFCA;

 (b) Liability is asserted against the EFCA subsidiary by reason of the alleged

participation of said subsidiary, as an aider, abettor, or conspirator, in the violation by EFCA of a statutory or common law duty to the claimant; and

 (c) The conduct of the EFCA subsidiary that constitutes such participation was carried out at the direction of a person who was at the time an officer or employee of EFCA.

**I.** *Does the debtor have a property interest in its subsidiaries?*

According to Section 111 of the Bankruptcy Act (11 U.S.C. § 511), the court *in which the Chapter X petition is filed* "shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its *property*, wherever located." (Emphasis added.) To protect this jurisdiction, Section 116(4) of the Bankruptcy Act (11 U.S.C. § 516(4)) expressly grants the court the power to ". . . enjoin or stay until final decree the commencement or continuation of a suit against the debtor *or its trustee or any act or proceeding to enforce a lien upon the property of the debtor.*" (Emphasis added.) Therefore, under these statutes, this court would have jurisdiction to enjoin the described claims against EFCA's subsidiaries in the MDL proceedings and to determine the validity of those claims in the present reorganization proceeding, if the subsidiaries constitute "property" of EFCA within the meaning of these code sections.

 Ordinarily, a parent is not deemed to have a property interest in the assets of an independent subsidiary for the purpose of jurisdiction over those assets under Section 111 of the Bankruptcy Act. In re Adolf Gobel, Inc., 80 F.2d 849 (2d Cir. 1936). An exception to this rule arises when a subsidiary is seen as the *alter ego* of its parent or when the parent and subsidiary are "so completely 'one' that the corporate veil may be pierced with impunity and technicalities laid aside." 6 Collier on Bankruptcy ¶ 3.11, p. 500 (14th ed. 1972); *see also*, Stone v. Eacho, 127 F.2d 284, 288 (4th Cir. 1942); Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845 (2d Cir. 1966); Commerce Trust Co. v. Woodbury, 77 F.2d 478 (8th Cir. 1935).

The court must consider whether it can "pierce the corporate veil" between EFCA and its subsidiaries or disregard the separate corporate existence of these subsidiaries under the circumstances of this case. At the outset, the court notes that "the general rule against enjoining a suit against a solvent subsidiary of the debtor is not inflexible," and "that the meaning of the term 'property' turns on the particular facts of each case," In re Beck Industries, 479 F.2d 410, 417 (2d Cir. 1973), *see also* In re Imperial "400" National, Inc., 429 F.2d 671, 677, 678 (3d Cir. 1970), and that the tendency of judicial interpretation of the Act has been in the direction of progressive liberalization of the bankruptcy power "to meet the challenge of present day economics and business conditions." In re International Power Securities Corp., 170 F.2d 399, 402 (3d Cir. 1948).

██ ██ The exceptional facts of this case suggest good reason for this court to disregard the separate corporate existence of EFCA's subsidiaries solely for the purpose of asserting jurisdiction over the described claims. First, the fraudulent scheme which caused EFCA's insolvency is the very basis for the derivative claims against EFCA's subsidiaries. In short, officials of EFCA disregarded the separate entity status of its subsidiaries, in order to accomplish their fraudulent scheme.[2] Second, the claimants in the MDL proceedings do not justify their actions against the debtor's subsidiaries on the basis of their reliance on the subsidiaries' independent corporate existence. Each claim against a subsidiary arises from the claimant's relationship as a security holder or creditor of the parent corporation. The cases in which courts refused to disregard the separate corporate existence of the debtor's subsidiary emphasize that the creditors had relied on the

---

2. According to Witkin, 6 Summary of California Law, p. 4317 (8th ed. 1974): "When a corporation is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the acts as if they were done by the individuals themselves or by the controlling corporation."

subsidiary's separate entity status when they extended credit or entered into a transaction with respect to the subsidiary. In effect, these creditors had relied on the fact that their claims against an independent subsidiary could not be subordinated to the claims of the parent's creditors. *See, e. g.,* In re Beck Industries, Inc., *supra,* at 417–418. Also several cases in which courts disregarded the subsidiary's separate corporate identity have emphasized the fact that creditors had extended credit to the debtor and the underlying subsidiaries as a unit and had not relied on the assets of a single independent subsidiary for protection. *See* Stone v. Eacho, *supra,* at 287 and 288; Chemical Bank New York Trust Co., v. Kheel, 360 F.2d *supra,* at 847, and Friendly, J., concurring at 848. Third, the debtor in this case is a holding company. Its principal assets consist of all the outstanding stock of its subsidiaries, and its value in these reorganization proceedings depends upon the earning power of the operating assets which such outstanding stock represents. *See* Petition of Portland Electric Power Co., 97 F.Supp. 877 (D.Or.1943). Finally, as discussed in more detail in the second part of this opinion, *infra,* the described claims "directly affect" the reorganization proceedings in this court because the existence of such claims makes it impossible to place a value on New Company, to determine the extent to which the secured creditors are in fact secured, to classify claimants according to priority, and to effect an equitable distribution. Therefore, the court concludes that a holding company has a limited "property" interest in its subsidiary solely for the purpose of asserting jurisdiction in Chapter X proceedings over certain narrowly defined claims against its subsidiary when (1) the holding company owns all the outstanding stock of the subsidiary, (2) no claimant to be enjoined has stated a claim that is based on a transaction in which the claimant had solely relied on the independent status of the subsidiary, (3) the claimant's actions against the

subsidiary derive from fraudulent activities of the parent's officers who disregarded the separate corporate identity of the subsidiary in perpetrating the fraud, and (4) the claims to be enjoined directly affect a substantial portion of the parent's value and raise a serious threat to reorganization itself.

Under the foregoing analysis, the wholly owned subsidiaries of EFCA constitute "property" of the debtor by reason of the limited equitable purposes of the *alter ego* doctrine. Hence, this reorganization court has jurisdiction under Section 111 of the Bankruptcy Act to hear the described claims against EFCA's subsidiaries in these proceedings as claims against the debtor estate and further has the power under Section 116(4) of the same act to enjoin further prosecution of these claims in other forums.

II. *Does this Court have inherent jurisdiction over the described claims against debtor's subsidiaries?*

This court believes that Section 2(a)(15) of the Bankruptcy Act (11 U.S.C. § 11(a)15)) provides an alternative and more appropriate basis upon which to assert jurisdiction to enjoin and to hear the described claims in these reorganization proceedings. This code section gives this court power over actions in other forums, if the pendency of those actions would frustrate reorganization or make it impossible for this court to enforce specific provisions of Chapter X. In short, this provision authorizes this court to assert jurisdiction over controversies which could as a practical matter deprive the court of its power or jurisdiction to effect a plan of reorganization in the event these controversies were litigated in other forums.

Section 2(a)(15) of the Bankruptcy Act, states:

The courts of the United States . . . are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this [Act] . . . , to—

\* \* \* \* \* \*

(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, *as may be necessary for the enforcement of the provisions of this* [*Act*] . . . . (Emphasis added.) [3]

\* \* \* \* \* \*

Under Chapter X, this court must determine whether the plan of reorganization is "fair and equitable, and feasible." Bankruptcy Act Sections 174 and 221(2), 11 U.S.C. §§ 574 and 621(2). In reaching a conclusion on this broad issue, the court must determine *inter alia* the amount of the claims against the debtor, the reorganization value of the debtor, and the classification of creditors. In addition, the court must determine which claims are entitled to participate in the plan depending on the value of the debtor and the priorities established by the classification of creditors. Finally, the court must decide whether the securities proposed to be issued would fairly compensate each claimant entitled to participate. Comment, The Proposed Bankruptcy Act: Changes in the Absolute Priority Rule for Corporate Reorganization, 87 Harv. L.Rev. 1786, 1793–95 (1974); Blum, Full Priority and Full Compensation in Corporate Reorganizations: A Reappraisal, 25 U.Chi.L.Rev. 417 (1958); Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L. Ed. 982 (1941). One of the code sections of the Bankruptcy Act which is critical to this analysis is Section 197 (11 U.S.C. § 597). It requires the judge to "fix the division of creditors and stockholders into classes according to the nature of their respective claims and stock," and to determine summarily the value of the secured creditors' security interest. If jurisdiction over the described claims against the debtor's subsidiaries is necessary "for the enforcement of [these] provisions of the [Act]," (Bankruptcy Act § 2(a)(15)) then it is appropriate for this court to enjoin the described claims pending in the MDL proceedings and to hear them in the present reorganization proceedings.

The facts of this case make it clear that this court cannot determine whether the plan of reorganization is "fair and equitable" without exercising jurisdiction over the described claims. Bankruptcy Act § 221(2). Before the court can classify creditors in accordance with Section 197, it must assign a value to the debtor's property. Since the claims against the debtor's subsidiaries in the MDL proceedings are enormous and recovery on these claims through those proceedings could come from the assets of these subsidiaries, any reorganization value of the debtor is necessarily dependent upon a resolution of these controversies. Moreover, the court cannot rule that a plan of reorganization is fair and equitable until it classifies creditors according to priority. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). Before this classification can be finalized however, the court must determine whether a creditor has security for its claim. If such security exists the court must value it under Section 197. If the creditor is entitled to an amount in excess of the value of its security, the creditor is classified as a general creditor as to the excess. Matter of Madison Railways Co., 115 F.2d 586, 588 (7th Cir. 1940), Bankruptcy Act § 197. In the present case, the security interest of the Revolving Credit Banks cannot be evaluated until the described claims are

---

3. *See also* Section 2(a)(6) of the Bankruptcy Act (11 U.S.C. § 11(a)(6)) which states:

The courts of the United States . . . are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this [Act] . . . ., to—

\* \* \* \* \*

(6) Bring in and substitute additional persons or parties in proceedings under this title when necessary for the complete determination of a matter in controversy;

resolved. These banks hold the stock of Bankers, the primary target of the described claims, as security for their loans to EFCA. Therefore, the value of this security will decrease or be entirely eliminated if other parties prevail on their claims against Bankers. Moreover, the Revolving Credit Banks would be entitled to vote on the plan of reorganization in their capacity as unsecured creditors in proposed Class 6 to the extent they become unsecured creditors due to a successful adjudication of the described claims against Bankers by other parties in the MDL proceedings. Since Section 197 requires approval of a plan of reorganization by a vote of two-thirds in amount of each class, the Revolving Credit Banks, in their capacity as unsecured creditors in Class 6, could significantly affect the outcome of the Class 6 Creditors' vote. Therefore, no final vote on the plan can commence until the claims against Bankers are resolved and consequently no reorganization can be accomplished until that time.

Section 221(a) also requires this court to determine the "feasibility" of the plan. This determination must focus upon the economic soundness of the proposed financial structure of the reorganized company. 6A Collier on Bankruptcy ¶ 11.07, p. 638 (14th ed. 1972). Until the court knows which subsidiaries will become valuable economic units of New Company, it cannot evaluate the economic viability of New Company's financial structure. Which of EFCA's subsidiaries will contribute to New Company's economic value depends upon some disposition of the described claims which are now asserted in the MDL proceedings where claimants seek recoveries directly from these subsidiaries' assets.

The foregoing analysis clearly establishes the fact that Chapter X reorganization cannot proceed until the claims described in the trustee's application are resolved. In addition, the court also concludes that it is necessary to resolve these claims through adjudication within its summary jurisdiction under Chapter X. If the actions against Bankers, the major target of the described claims, are litigated to conclusion in the MDL proceedings, the judgments will establish claims against the assets of Bankers. This could force Bankers into liquidation under state insurance laws. Such liquidation would destroy the going concern value of Bankers and would thereby deprive New Company of a major portion of its reorganization value. The court could and should eliminate this risk by adjudicating the described claims in these reorganization proceedings and by limiting any recovery on these claims to some form of participation in the plan of reorganization.

Moreover, resolution of these described claims in the MDL proceedings could indefinitely delay the promulgation of the plan of reorganization. As noted previously, a resolution of these claims is necessary in order to assign a value to New Company. This assigned value is a prerequisite for an equitable distribution under a plan of reorganization. But no equitable distribution can be effected in the reorganization proceedings until the described claims are resolved, because the claimants in the MDL proceedings are also creditors and security holders of EFCA in these Chapter X proceedings and their MDL claims are coextensive with the claims asserted by them against EFCA in the Chapter X proceedings. In view of this relationship between the two proceedings, the court cannot make any distribution to these claimants under the plan of reorganization until the claims now asserted by them in the MDL proceedings are resolved. Only this resolution will enable the reorganization court to adjust the amount of their claims here in accordance with any recovery which they may receive from a successful prosecution of claims in the MDL proceedings. However, it may be impossible to postpone reorganization until those claims can be finally resolved in the MDL proceedings. If settlement of these claims does not materialize and plenary trial is necessary in the MDL proceedings, an

ultimate decision by the MDL court appears to be many years away. This delay could adversely effect the business of EFCA and could threaten the existence of crucial agreements with certain classes of creditors.

It follows from the foregoing discussion that the pendency of the described claims in the MDL proceedings will frustrate the ability of this court to reorganize EFCA or will make it impossible for this court to proceed with the plan of reorganization. Therefore, the factual situation which confronts this reorganization court is governed by those cases which hold that a Chapter X court has jurisdiction over a dispute between third parties, if resolution of that dispute is necessary for reorganization to proceed, or if it is impossible to completely administer the estate of the debtor without determining that controversy. In re Burton Coal Co., 126 F.2d 447 (7th Cir. 1942); Central States Corp. v. Luther, 215 F.2d 38, 45 (10th Cir. 1954); O'Dell v. United States, 326 F.2d 451, 455 (10th Cir. 1964).

III. *Does the assumption of jurisdiction over the described claims against Bankers violate Section 4 of the Bankruptcy Act?*

Several claimants who object to the trustee's application also contend that Section 4 of the Bankruptcy Act (11 U.S.C. § 22) completely excludes insurance companies from the jurisdiction of a reorganization court. Therefore, they maintain that this court can neither enjoin the described claims against Bankers in the MDL proceedings nor adjudicate those claims in these reorganization proceedings. In response, the trustee and parties supporting his application contend that Section 4 merely precludes this court from adjudging Bankers as a bankrupt and from reorganizing this insurance company under the provisions of Chapter X. Therefore, this court must decide whether Section 4 prevents it from asserting jurisdiction over the described claims against Bankers under all circumstances, or whether that section

merely prohibits it from reorganizing Bankers or adjudging it as a bankrupt under the Act.

The court is convinced that Section 4 does not prevent it from asserting jurisdiction over the claims against Bankers. Section 4 merely excludes insurance companies from becoming voluntary or involuntary bankrupts. According to Subsection 4(a), "any person, except a municipal, railroad, insurance, or banking corporation . . . shall be entitled to *the benefits of this act as a voluntary bankrupt.*" (Emphasis added.) In similar language, Subsection 4(b) excludes an insurance company from the benefits of the Act as an involuntary bankrupt. Therefore, the court must determine what these subsections mean when they exclude an insurance company from *the benefits of the Act as a bankrupt.* Section 1(4) of the Bankruptcy Act (11 U.S.C. § 1) defines a "bankrupt" as "a person against whom an involuntary petition or an application to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt." For purposes of Chapter X reorganization proceedings, Section 102 (11 U.S.C. § 502) states that provisions relating to "bankrupts" shall be deemed to relate to a "debtor," which term is defined in Section 106(5) (11 U.S.C. § 506(5)) as a "corporation by or against which a petition has been filed under [Chapter X]." Given these definitions, the language of Section 4 merely suggests that insurance companies are not entitled to "the benefits of this Act" by filing a petition for bankruptcy or by filing a petition as a debtor under Chapter X. When none of these events have occurred and when a bankruptcy court does not take action which is tantamount to reorganizing insurance companies or adjudging them as bankrupts, the court concludes, as a matter of law, that Section 4 does not preclude it from asserting jurisdiction over claims against insurance companies pursuant to other jurisdictional statutes.

The foregoing conclusion is consistent with the purposes for which Section 4 was enacted. With the exception of municipalities, Section 4 excludes businesses which are affected with a public interest. These businesses require public supervision and control because they deal with people who are at an economic disadvantage, vis-á-vis these enterprises. In the case of insurance companies, most states have enacted regulatory schemes which include provisions for insolvency. Since these schemes are designed to protect the interests of policy holders and to provide for the adjustment of the rights of creditors and policy holders in the event of insolvency, Congress in enacting Section 4 decided that liquidation of insurance companies should be left to the states. In re Union Guarantee & Mortgage Co., 75 F.2d 984 (2d Cir. 1935); In re Supreme Lodge of the Masons Annuity, 286 F. 180, 184 (N.D.Ga. 1923). Since the reorganization of an insurance company or its adjudication as a bankrupt under the Act would preempt state liquidation proceedings for that company, Congress enacted Section 4 to preserve the exclusive jurisdiction of the states over the liquidation of insurance companies and to prevent the reorganization of insurance companies or their adjudication as bankrupts. *See* Woolsey v. Security Trust Co., 74 F.2d 334, 337 (5th Cir. 1934).

■ By preserving state liquidation proceedings, Congress sought to prevent bankruptcy or reorganization courts from interfering with comprehensive state insurance regulations and with the rights of insureds protected by such regulations. *See* In re Union Guarantee & Mortgage Co., *supra*; In re Supreme Lodge of the Masons Annuity, *supra*. As the language of Section 4 suggests, Congress determined that interference with state insurance regulations would not occur as long as bankruptcy courts did not reorganize insurance companies or adjudge them to be bankrupts. To assure that this congressional intent is in harmony with the language of Section 4, as interpreted above, a bankruptcy court should consider the impact of its exercise of jurisdiction on state insurance proceedings and regulations when determining whether its action is tantamount to a reorganization of an insurance company.

Under this analysis, it is clear that Section 4 does not preclude this court's assumption of jurisdiction over the claims against Bankers. Since the exercise of this power does not interfere with state liquidation proceedings, it is consistent with the congressional intent to preserve exclusive state jurisdiction over the liquidation of insurance companies. Moreover, the court will not interfere with the rights of insureds or with state regulation of insurance companies by adjudicating the claims against Bankers in these reorganization proceedings. As noted previously, this court's exercise of its summary jurisdiction over these controversies will transform them from claims against the assets of Bankers to claims under the plan of reorganization. Consequently, any adjudication of these claims will not threaten the viability of Bankers as a going concern or the underlying rights of Bankers' policyholders. Therefore, the assertion of jurisdiction over the claims against Bankers is consistent with the purpose of Congress' enactment of Section 4 and should not be regarded as an attempt to take action which is tantamount to the reorganization of Bankers.

**IV. *Does the assumption of jurisdiction over the described claims violate the Seventh Amendment?***

■ Some claimants in the MDL proceedings who object to the trustee's application contend that the trial of their claims in these reorganization proceedings would violate their right to a trial by jury under the Seventh Amendment. These claimants point out that they would be entitled to a jury trial in the MDL proceedings since they seek money recoveries in those actions. A trial of their causes of action in these reorgani-

zation proceedings as claims against the *res* of the debtor estate would transform them into claims in equity to which the Seventh Amendment does not apply. According to the claimants, this transformation conflicts with the decisions of Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), which they appear to cite for the proposition that a court of equity cannot cut off a party's right to a jury trial on an issue at law by trying a common issue in equity first.

The court believes that the decision of Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) conclusively disposes of this contention. In this decision, the United States Supreme Court held that the rule enunciated in *Beacon Theatres* and *Dairy Queen, supra*, does not apply to a statutory scheme which was enacted by Congress pursuant to its bankruptcy power under Art. I, § 8 of the Constitution and which "contemplat[ed] the prompt trial of a disputed claim without the intervention of a jury." Katchen v. Landy, *supra* 382 U.S. at 339, 86 S.Ct. at 478. *Beacon Theatres* and *Dairy Queen* merely held that "where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" Dairy Queen, Inc. v. Wood, *supra* 369 U.S. at 472–73, 82 S.Ct. at 897. (Emphasis added.) The facts of this case make it imperative for this court to assume summary jurisdiction over the described claims against EFCA's subsidiaries in order to proceed with reorganization. Therefore, these facts in themselves satisfy the "imperative circumstances" exception to the *Beacon Theatres* doctrine. More broadly, Katchen v. Landy can be interpreted to stand for the proposition that imperative circumstances may be found "to exist in the necessity to give effect to a congressional intention to provide a procedure for expeditious de-

termination of [bankruptcy] claims without the intervention of a jury." 5 Moore's: Federal Practice ¶ 38.11, p. 128.16 (2d ed. 1974).

In view of the foregoing, it is ordered that the trustee's application for injunctive relief is granted.

It is further ordered that this Memorandum and Order shall constitute the court's findings of fact and conclusions of law.

## PRELIMINARY INJUNCTION

This matter came on for hearing on March 5, 1975 on the trustee's application for injunctive relief which was filed on January 31, 1975. The court this day filed its Memorandum and Order Granting Trustee's Application to Enjoin Prosecution of Certain Actions Against Debtor's Subsidiaries, which memorandum and order constitutes the court's findings of fact and conclusions of law.

It is hereby ordered, adjudged and decreed that until further Order of this court, all persons, partnerships, corporations, and other legal entities, and their respective attorneys, servants, agents and employees (hereinafter referred to as "claimants") be, and they hereby are, jointly and severally enjoined and restricted from commencing or continuing any action at law or suit or proceeding in equity before any agency or body (other than in this proceeding) against any wholly-owned subsidiary of Equity Funding Corporation of America, a Delaware corporation (hereinafter referred to as "EFCA") (other than Equity Funding Life Insurance Company, an Illinois corporation) of any claim which has all of the following characteristics:

(a) The claim is based upon or arises out of (i) the acquisition or retention by the claimant of a note, share of stock, or other security issued or guaranteed by EFCA, or (ii) the extension of credit by the claimant to EFCA;

(b) Liability is asserted against the EFCA subsidiary by reason of the alleged participation of said subsidiary, as

an aider, abettor, or conspirator, in the violation by EFCA of a statutory or common law duty to the claimant; and

(c) The conduct of the EFCA subsidiary that constitutes such participation was carried out at the direction of a person who was at the time an officer or employee of EFCA.

Claims having all of the above-described characteristics may be asserted in this proceeding in accordance with the provisions of this court's "Pre-Trial Order No. 1 Re: Claims Against Subsidiaries" (No. B–0337), dated March 21, 1975, and any amendments thereto.

## ORDER GRANTING JURISDICTION TO DETERMINE THE RECLAMATION CLAIM OF FIDELITY CORPORATION

The trustee's application for jurisdiction over the reclamation and rescission claims of Fidelity Corporation came on for hearing on March 5, 1975. The court now rules that it has summary jurisdiction to try the claims of Fidelity Corporation for reclamation or rescission of certain shares of Bankers National Life Insurance Company because it has constructive possession of Bankers' stock, In re Muntz TV, 229 F.2d 228 (7th Cir. 1956), In re Goldman, 5 F. Supp. 973, 974 (S.D.N.Y.1933); 6 Collier on Bankruptcy, § 3.05, pp. 440–446 (14th ed. 1972), and because it cannot confirm a plan of reorganization without resolving Fidelity's claims. Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry., 294 U.S. 648, 675–76, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); In re Burton Coal Co., 126 F.2d 447 (7th Cir. 1942).

## ORDER DENYING AN INJUNCTION AGAINST THE PROSECUTION OF CERTAIN CLAIMS AGAINST EQUITY FUNDING LIFE INSURANCE COMPANY

The application to enjoin prosecution of certain claims against Equity Funding Life Insurance Company, an Illinois corporation, came on for hearing on March 5, 1975. The court now concludes that it is unnecessary to assert jurisdiction over certain claims against Equity Funding Life Insurance Company, a subsidiary of the debtor, since the existence of these claims do not make it impossible at this time for this court to proceed with reorganization. For the most part, matters pertaining to EFLIC have been resolved by Illinois authorities through state liquidation proceedings. All that remains are Bache & Company's appeals before the Illinois Supreme Court and the Ninth Circuit Court of Appeal. Therefore, in the exercise of its discretionary power over jurisdiction, the court denies the application of Bache & Company for an order enjoining the prosecution of those claims against EFLIC.