[No. B066871. Second Dist., Div. Three. July 23, 1993.]

JOHN GARAMENDI, as Insurance Commissioner, etc., Plaintiff and Respondent, v.
EXECUTIVE LIFE INSURANCE COMPANY, Defendant;
MORGAN STANLEY MORTGAGE CAPITAL, INC., Real Party in Interest and Appellant;
SIGNATURE GROUP et al., Real Parties in Interest and Respondents.

COUNSEL

Irell & Manella, Alexander F. Wiles, Evan A. Jenness and Christopher S. Harman for Real Party in Interest and Appellant.

Daniel E. Lungren, Attorney General, Rubenstein & Parry, Karl L. Rubenstein, Dana Carli Brooks, Charles S. Bronitsky and Kathleen M. McCain for Plaintiff and Respondent and for Real Parties in Interest and Respondents.

OPINION

**CROSKEY, J.**—This appeal by Morgan Stanley Mortgage Capital, Inc. (Morgan Stanley), involves one component of the immense and complex

litigation over the rehabilitation of Executive Life Insurance Company (ELIC). While separate litigation goes forward to determine other important issues such as creditor priorities,[1] this action raises the issue of whether the trial court had jurisdiction, in ELIC's insolvency proceedings, to make an order relating to the assets of certain partnerships through which ELIC had made investments of its premium income.

We hold that, when an "identity of interest" exists between an insolvent insurance company and a partnership in which the insurance company has a substantial ownership interest, a trial court overseeing the company's insolvency may validly exercise in rem jurisdiction over such partnership's assets where reasonably necessary to promote the insolvent company's rehabilitation. We therefore shall affirm the trial court's order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties and the Relevant Court Orders*

ELIC is a California insurance company. Its insolvency proceedings commenced on April 11, 1991.[3] On that date, the trial court issued an order entitled "Order Appointing Conservator, Establishment of Procedures, Issuance of Injunctions And Related Orders" (the April 11 order). The statutory basis for this order was Insurance Code section 1011, subdivision (d), which provides for the Insurance Commissioner of the State of California (Commissioner) to take possession of an insurance company's assets if the company is in such a condition as to be a hazard to its policyholders, creditors or the public.[4] The April 11 order appointed the Commissioner as

---

[1]See, for example, *Commercial National Bank* v. *Superior Court* (1993) 14 Cal.App.4th 393 [17 Cal.Rptr.2d 884]; *Texas Commerce Bank* v. *Garamendi* (1992) 11 Cal.App.4th 460 [14 Cal.Rptr.2d 854].

[2]Simultaneously with the filing of this appeal, Morgan Stanley filed in this court a petition for a writ of mandate, prohibition or other appropriate relief (case No. B065882). By its petition, Morgan Stanley sought the identical relief requested in this appeal and, in addition, sought an order staying the trial court's consideration of a motion filed by the Commissioner: "Motion Regarding Proposed Rehabilitation of ELIC Real Estate Assets Subject to Secured Claims." A hearing on this motion was set for May 14, 1982. On May 13, 1992, Division Four of this court issued its order staying proceedings on such rehabilitation motion. On October 13, 1992, the same division denied the writ, but continued the stay pending resolution of this appeal.

[3]Although the Constitution gives to Congress the power to provide for bankruptcies, the Congress has determined that insurance insolvency proceedings shall be subject to state law. (11 U.S.C. § 109.)

[4]More specifically, Insurance Code section 1011 provides, in pertinent part: "The superior court of the county in which is located the principal office of such person in this State shall, upon the filing by the commissioner of the verified application showing any of the following

conservator of ELIC, enjoined the transfer, hypothecation, or other dissipation of ELIC's assets, and enjoined the initiation, prosecution, or continuation of all proceedings against ELIC in any other forum. ELIC's partnership interests were included in the schedule of ELIC's property.[5]

Prior to the appointment of the conservator, ELIC had carried on an investment strategy which included forming and participating in numerous general and limited partnerships, joint ventures and other business enterprises. Certain of these entities were used solely for real estate investments, which investments were acquired with funds principally provided by ELIC and substantially derived from premiums paid by policyholders. ELIC invested more than $650 million through such affiliated entities.[6]

The Signature Group (Signature) and TSG Holdings, L.P. (TSG) are two California limited partnerships (collectively, the Signature Partnerships), which were formed by ELIC as part of its real estate investment strategy. However, they themselves are not in the business of insurance. ELIC has a total of approximately $65 million invested in them, primarily from premium income.

ELIC has a 92 percent interest in Signature and is both a limited and a general partner. The only other partner is JORAD Associates (JORAD), a

conditions hereinafter enumerated to exist, issue its order vesting title to all of the assets of such person, wheresoever situated, in the commissioner or his successor in office, in his official capacity as such, and direct the commissioner forthwith to take possession of all of its books, records, property, real and personal, and assets, and to conduct, as conservator, the business of said person, or so much thereof as to the commissioner may seem appropriate, and enjoining said person and its officers, directors, agents, servants, and employees from the transaction of its business or disposition of its property until the further order of said court: . . . [¶] . . . [¶] (d) That such person is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or creditors, or to the public."

[5]The trial court made it clear that the April 11 order applied to partnership assets when it issued its supplemental order on October 15, 1991 entitled: *"Order Regarding the Conservator's Motion for Instructions Regarding Stay of Pending and Threatened Litigation Against ELIC Subsidiaries, Partnerships and Joint Ventures."* In addition, this second order established notice requirements for parties wishing to proceed against ELIC or any of its affiliated entities in the insolvency proceedings or elsewhere. The order also provided for criteria to be used to determine whether sanctions would be imposed upon a party found to be in contempt for violating the April 11 order. The order provided that sanctions would not be imposed if: (a) the entity or person proceeding in a forum other than the trial court did so in the good faith belief that its action was not enjoined, (2) the entity or person gave notice to the conservator of its proceeding in the other forum and (3) the party made a good faith effort to resolve the issue.

[6]These and other factual claims concerning ELIC's financial condition and the nature and extent of ELIC's interest in the various partnerships are made in the several pleadings filed by the Commissioner, as well as in his briefs on appeal. They are nowhere contested by Morgan Stanley, and we therefore presume them true. (*Midwife* v. *Bernal* (1988) 203 Cal.App.3d 57, 63 [249 Cal.Rptr. 708].)

California general partnership, which is the managing general partner of Signature.[7] The sole partners in TSG are Signature and Credit America Corporation, a California corporation wholly owned by Signature.

Morgan Stanley is a Delaware corporation and is engaged in the business of investment banking. As we discuss in more detail below, Morgan Stanley claims to be a secured creditor of the Signature Partnerships. In such capacity, it objects to the orders made by the trial court in the ELIC insolvency proceedings which purport to affect the assets of those partnerships.

At the time of trial, Security Pacific Bank (Security Pacific) was one of ELIC's principal banks and was one of 13 banks expressly enjoined in the April 11 order from "permit[ting] any withdrawal, offset, transfer or other disposition of [any of the funds or securities or any other property of ELIC] except upon the prior written instructions of the Conservator or order of [the] Court."[8]

### 2. *The Purchase-Repurchase Agreements*

In 1990, Morgan Stanley and the Signature Partnerships entered into a series of reverse-repurchase transactions in which Morgan Stanley bought from the Signature Partnerships certain mortgage notes and related documents, which the Signature Partnerships agreed to repurchase on an agreed future date for $50 million. By these agreements, the Signature Partnerships sold the mortgage notes to Morgan Stanley in exchange for a specified payment and agreed to repurchase them at a later time for the agreed sum. Formally, Morgan Stanley actually purchased the mortgage notes and was to be the owner of the notes until they were repurchased. However, the arrangement was, in reality and in effect, a secured loan from Morgan

---

[7]It is not at all clear from the record what persons or entities constitute JORAD. The partners in JORAD have at various times been Brentwood Equities, Inc., a California corporation, Twincor, Inc., a California corporation, Signature Realty, Ltd., a California corporation, Signature Mortgage Ltd., a California corporation, Signature Properties, Ltd., purportedly a Nevada corporation, Libryka, Inc., a California corporation, and Haute Dog, Inc., a California corporation. The court below characterized JORAD's interest in the Signature Partnerships as "sweat equity." This suggests that its partnership interest derived from brokerage commission earnings on transactions related to partnership investments.

[8]Security Pacific is the first of the 13 banks specified in footnote 5 of the injunction as being covered by the court's order. Security Pacific alone is mentioned by name in the text of the court's order as being "one of the principal banks of Respondent" and therefore "expressly . . . enjoined" from designated acts. The other banks are referred to in the same passage as "the other banks listed in footnote 5."

Stanley to the Signature Partnerships, for which the mortgage notes constituted the security.[9]

The subject mortgage notes were placed in the custody of Security Pacific National Bank for the duration of the agreement. On June 1, 1991 and October 18, 1991, the Signature Partnerships' obligations on the two purchase-repurchase agreements matured. They endeavored to negotiate an extension of the agreements, and the agreements were indeed extended while negotiations went forward. However, the parties were apparently unable to agree on the final terms for an extension, and on October 30, 1991, the Signature Partnerships' general counsel wrote to Security Pacific, demanding that the mortgage notes not be released to Morgan Stanley or any other party without the Signature Partnerships' express written consent. By that letter, counsel also advised Security Pacific to assure itself that the notes were not subject to the April 11 order before taking any action respecting them. On November 14, 1991, Morgan Stanley demanded that Security Pacific surrender possession of the notes. Security Pacific refused, citing the April 11 order.

### 3. *The Federal Action*

In response, Morgan Stanley, on November 17, 1991, filed suit against the Signature Partnerships and Security Pacific in the United States District Court for the Central District of California. Morgan Stanley, claiming diversity jurisdiction, alleged causes of action for breach of the repurchase agreement, conversion, inducing breach of contract, and declaratory relief.

A week later, on November 25, the Commissioner moved to intervene and requested that the federal action be dismissed. He argued that the April 11 order, enjoining actions against the assets of ELIC, applied to Morgan Stanley's federal action against the assets of the Signature Partnerships.

On January 31, 1992, the district court granted the Commissioner's motion, citing *Safeway Trails, Inc.* v. *Stuyvesant Ins. Company* (M.D.N.C. 1962) 211 F.Supp. 227, in which the court dismissed a federal action where a state receivership court had assumed in rem jurisdiction over assets of an insurance company. (211 F.Supp. at pp. 229, 239.) The district court noted that the *assets* of the Signature Partnerships were not explicitly listed in the April 11 order as assets of ELIC, but held that the state court was best suited to

---

[9]In the trial court, Morgan Stanley contended its action to obtain the mortgage notes could not be enjoined by the trial court, because Morgan Stanley, not the Signature Partnerships, was at all relevant times the "owner" of the notes. However, on appeal Morgan Stanley has relegated this argument to a footnote and now focuses upon its contention that the notes are the property of the Signature Partnerships and therefore not assets of ELIC.

define the scope of the in rem jurisdiction it had asserted. The district court also noted that Morgan Stanley had notice of the state insolvency proceedings, having been served with the conservator's "Motion for Instructions Regarding Stay . . ." and the court's order on that motion. (See fn. 5, *ante.*) The dismissal appears to have been based upon the expectation that the state court would exercise jurisdiction over the dispute between Morgan Stanley and the Signature Partnerships, as well as asserting jurisdiction over their assets.

### 4. *Final Proceedings in State Court*

On February 13, 1992, the Commissioner moved in the trial court to assume jurisdiction over Morgan Stanley's claim against the Signature Partnerships which had been asserted in the federal action. That motion was granted on the same date. Morgan Stanley subsequently moved to vacate the order of February 13, 1992, and to dissolve the injunctions contained in the April 11 order, insofar as they applied to Morgan Stanley's claims. That motion was denied on March 19, 1992. This timely appeal followed.

### CONTENTIONS ON APPEAL

Morgan Stanley raises two principal contentions: (1) California law prohibited the trial court from exercising in rem jurisdiction over the property of a partnership that was an entity legally separate from ELIC and (2) federal law prohibited the trial court from applying state insolvency laws to the Signature Partnerships because *they* were not in the business of insurance.

### DISCUSSION

### 1. *Standard of Review*

■ Ordinarily, an order granting or denying a preliminary injunction or granting or denying a motion to dissolve an injunction is reviewed under the abuse of discretion standard. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) However, where the grant or denial of a preliminary injunction is dependent upon construction of a statute, and the matter is purely a question of law, the standard of review is not whether discretion was appropriately exercised, but whether the statute was correctly construed. (*Ciani* v. *San Diego Trust & Sav. Bank* (1991) 233 Cal.App.3d 1604, 1610-1611 [285 Cal.Rptr. 699]; *Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 702 [224 Cal.Rptr. 903].)

Here, it was uncontested that (1) ELIC engaged in real estate investments through numerous partnerships and other business entities, (2) these investments were financed primarily from premium income, (3) the Signature Partnerships were two of the partnerships through which ELIC conducted its real estate investments, (4) ELIC was a 92 percent general and limited

partner in the Signature Partnerships and (5) Morgan Stanley was a secured creditor of the Signature Partnerships. Based upon these undisputed facts, the trial court concluded it had jurisdiction, under the Insurance Code provisions governing insurance company insolvencies (§§ 1010-1062), to assert in rem jurisdiction over the mortgage notes, which, by virtue of the circumstances, were effectively assets of ELIC, and to enjoin Morgan Stanley from proceeding in any other forum to foreclose upon its security or to otherwise recover against the Signature Partnerships.

Our determination upon review thus hinges upon the purely legal question of whether the trial court correctly determined its jurisdiction and authority under the statutes. We review this question independently. (*Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale, supra*, 179 Cal.App.3d at p. 702.)

2. *Under Both State and Federal Law, the Trial Court Properly Asserted In Rem Jurisdiction Over the Assets of the Signature Partnerships*

a. *Introduction.*

(1) *Relevant Statutory Authority*

The California statutes which govern this appeal are found in Insurance Code sections 1010 through 1062[10] and in particular, sections 1011,[11] 1020,[12] and 1058.[13] As we have seen, section 1011 provides that the superior court in the home county of an insurance company shall order the Commissioner to take title as conservator to the assets of the company under enumerated circumstances, including the circumstance that the company is

---

[10]Unless otherwise indicated, all statutory references are to the Insurance Code.

[11]For the text of the relevant portion of section 1011, see footnote 4, *ante.*

[12]Section 1020 provides, in pertinent part: "Upon the issuance of an order either under Section 1011 or 1016, or at any time thereafter, the court shall issue such other injunctions or orders as may be deemed necessary to prevent any or all of the following occurrences:

"(a) Interference with the commissioner or the proceeding.

"(b) Waste of assets of such person.

"(c) The institution or prosecution of any actions or proceedings.

"(d) The obtaining of preferences, judgments, attachments, or other liens against such person or its assets.

"(e) The making of any levy against any such person or its assets. . . .

". . . . . . . . . . . . . . . . . . . . .

"(g) Any managing general agent or attorney in fact from withholding from the commissioner any books, records, accounts, documents or other writing relating to the business of such person; provided, however, that, if by contract or otherwise any of the same are the property of such an agent or attorney, the same shall be returned when no longer necessary to the commissioner or at any time the court after notice and hearing shall so direct."

[13]Section 1058 provides: "In any proceeding pending under the provisions of this article, the court in which such proceeding is pending shall have jurisdiction to hear and determine, in such proceeding, all actions or proceedings then pending or thereafter instituted by or against the person affected by a proceeding under this article."

in such a condition that the further transaction of its business would be hazardous to its policyholders, creditors or the public. Section 1020 provides that if the Commissioner is appointed as a conservator under section 1011 or under section 1016,[14] the court has broad powers to enjoin numerous acts, including the following: (1) interference with the Commissioner or the proceeding, (2) waste of the company's assets, (3) the institution or prosecution of any actions or proceedings, (4) the obtaining of preferences, judgments, attachments, or other liens against the company or its assets and (5) the making of any levy against any the company or its assets.

The relevant federal statutes are the McCarran-Ferguson Act (15 U.S.C. §§ 1011-1015) and section 109(b) of the Bankruptcy Code (11 U.S.C. § 109(b)). The McCarran-Ferguson Act sets forth a policy declaration by the United States Congress that it is in the public interest that the primary regulation of the business of insurance be in the states, not in the national government. (15 U.S.C. § 1011; *American Internat. Group, Inc.* v. *Superior Court* (1991) 234 Cal.App.3d 749, 756-757 [285 Cal.Rptr. 765].) Section 109(b) of the Bankruptcy Code provides that a domestic insurance company is not eligible to be a debtor under the Code.

Any conclusion regarding the scope of a state court's jurisdiction in insurance insolvency proceedings must be in accord with the language of the foregoing state and federal statutes and must also be consistent with the separate, but complementary, public policies which animate them.

### (2) *The Statutory Scheme Is Based Upon Important Public Policy Considerations*

The public policies implicated in this case are those which concern the orderly administration of insolvencies as well as those which relate to the business of insurance.

The purpose of the federal bankruptcy law is to place the property of the debtor, wherever found, under the control of a single court for equal distribution among the creditors. (*Straton* v. *New* (1931) 283 U.S. 318, 320-321 [75 L.Ed. 1060, 1086-1087, 51 S.Ct. 465]; *Manter* v. *Howard* (1949) 94 Cal.App.2d 404, 408 [210 P.2d 880].) Bankruptcy law exists "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor

---

[14]Section 1016 provides that, upon application by the Commissioner, the court may order the liquidation of an insurance company for which the Commissioner has been appointed conservator if the Commissioner finds that efforts to proceed with the company's business would be futile.

from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor. [Citations.] . . . '[T]he stay [provided by 11 U.S.C. § 362] insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.' " (*A.H. Robins Co., Inc.* v. *Piccinin* (4th Cir. 1986) 788 F.2d 994, 998, cert. den. in *Piccinin* v. *A. H. Robins Co., Inc.* (1986) 479 U.S. 876 [93 L.Ed.2d 177, 107 S.Ct. 251].) To effect this purpose, Congress has established national uniformity of procedures for distributing assets of insolvents. (*International Shoe Co.* v. *Pinkus* (1929) 278 U.S. 261, 265 [73 L.Ed. 318, 320-321, 49 S.Ct. 108].)

The policy of assuring national uniformity in bankruptcy procedures generally excludes state regulation respecting insolvencies. (*International Shoe Co.* v. *Pinkus, supra,* 278 U.S. 261 at p. 265 [73 L.Ed. 318 at pp. 320-321].) However, in accord with the separate policy that regulation of the business of insurance should be in the states, Congress has determined it to be in the public interest that the liquidation or reorganization of insolvent insurance companies be in the states. (15 U.S.C. 1011 et seq.; 11 U.S.C. § 109(b); *In re Equity Funding Corporation of America* (C.D.Cal. 1975) 396 F.Supp. 1266, 1275.)

The public interest that resides in the orderly liquidation or reorganization of debtors is particularly compelling when the debtor is an insurance company. The business of insurance is affected with a public interest, and accordingly, the state has "an important and vital interest" in the liquidation or reorganization of insurance companies. (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761]; *Mitchell* v. *Taylor* (1935) 3 Cal.2d 217, 219 [43 P.2d 803]. Accord, *German Alliance Ins. Co.* v. *Lewis* (1914) 233 U.S. 389, 412-413 [58 L.Ed. 1011, 1022, 34 S.Ct. 612].)

The fundamental policy underlying the insolvency provisions of the Insurance Code is to protect policyholders, creditors, and the public. In support of this policy, the statute includes measures—among them, the "drastic remedy" provided by section 1011—which are intended to prevent dissipation of the company's assets when it fails to comply with regulations adopted for those parties' protection or when it is found by the Commissioner to be in a hazardous condition. (*In re Pacific Std. Life Ins. Co.* (1992) 9 Cal.App.4th 1197, 1201 [12 Cal.Rptr.2d 50]; *Financial Indem. Co.* v. *Superior Court* (1955) 45 Cal.2d, 395, 403 [289 P.2d 233].)

The interests of particular individual policyholders aside, insurance is a public asset and the public has an important stake in preserving the business.

Thus, the statutorily authorized actions which may be taken by the Commissioner, acting as a conservator, are subject only to the reasonable limitations which apply to the exercise of the police power; that is, the Commissioner's actions must be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory. (*Carpenter* v. *Pacific Mut. Life Ins. Co.*, *supra*, 10 Cal.2d at p. 329.)

> b. *A State Court Overseeing an Insurance Insolvency Proceeding Has In Rem Jurisdiction Over the Assets of Third Parties Which Have an "Identity of Interest" With the Insolvent Insurer.*

 Morgan Stanley first contends that principles of California partnership law prohibit the property of a partnership from being treated as the property of an individual partner, and thus the trial court improperly issued injunctions respecting the mortgage notes which belonged to the Signature Partnerships. This contention raises the issue of whether sections 1011, 1020 and 1058 invest a court overseeing insurance insolvency proceedings with the authority to assert in rem jurisdiction over the assets of, or enjoin the prosecution of claims against, a partnership in which the insurance company subject to insolvency proceedings is a partner.

The parties have cited no relevant California authorities regarding the "unprecedented" set of circumstances raised by this case,[15] and our independent research has revealed none. However, the insolvency proceedings respecting ELIC are analogous to proceedings in bankruptcy. We thus look to federal bankruptcy law for guidance. (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 349, fn. 8 [250 Cal.Rptr. 268, 758 P.2d 596].)

A survey of analogous cases adjudicated in bankruptcy indicates that the federal courts have not hesitated to assert jurisdiction over the assets of partnerships and other entities which are legally separate from a debtor in bankruptcy, where (1) there is a public interest in promoting a viable reorganization of the debtor (*A.H. Robins Co., Inc.* v. *Piccinin*, *supra*, 788 F.2d at p. 1008), and (2) the debtor and the partnership or other entity stand in such a relationship to one another that the result of a judgment against the related entity would be binding upon the debtor's estate. (*Id.* at p. 999.) Where the latter circumstance exists, the successful administration of the debtor's estate may well depend upon the outcome of the litigation against such related entities (*id.* at p. 1001); such litigation could reduce and diminish assets available to effect the debtor's reorganization, all to the

---

[15]The trial court emphasized the unusual nature of this case when it characterized the conditions giving rise to the dispute as "largely unprecedented in magnitude and in the intricacies of the deals that Mr. Carr put the [ELIC] in. . . ."

detriment of the debtor's creditors as a whole. (*Id.* at p. 1008.) Several cases are illustrative of the point.

In *A.H. Robins Co., Inc.* v. *Piccinin, supra,* 788 F.2d 994, the Fourth Circuit upheld a preliminary injunction granted by the district court enjoining suits against the insurer and several employees of A. H. Robins, after Robins filed a petition for reorganization under chapter 11 of the Bankruptcy Code. (788 F.2d at pp. 1007-1008.) In upholding the injunction, the court acknowledged that a bankruptcy court's jurisdiction ordinarily extends only to the debtor in bankruptcy and the debtor's property, not to third parties. (*Id.* at p. 999.) However, the court held that in "unusual circumstances," sections 362 and 105 of the Bankruptcy Code (11 U.S.C. §§ 362, 105) and the court's inherent equitable powers authorize a bankruptcy court to stay proceedings against a nonbankrupt third party. (788 F.2d at pp. 999, 1003.) Such unusual circumstances arise "when there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." (*Id.* at p. 999.)

The court found such an identity of interest between Robins and its insurer for the not surprising reason that the insurance policy against which the enjoined plaintiffs sought direct recovery was "property of the debtor" within the meaning of section 362(a)(3) of the Bankruptcy Code (11 U.S.C. § 362 (a)(3)). (*A.H. Robins, Co., Inc.* v. *Piccinin, supra,* 788 F.2d at p. 1001.) The court found an identity of interest between Robins and the sued employees, as the employees had rights under the company's bylaws and applicable state statutes to be indemnified by Robins for liability related to suits of the kind enjoined. (*Id.* at pp. 999, 1008.)

In *In re 48th Street Steakhouse, Inc.* (2d Cir. 1987) 835 F.2d 427, certiorari denied in *Rockefeller Group, Inc., et al.* v. *48th Street Steakhouse, Inc.* (1988) 485 U.S. 1035 [99 L.Ed.2d 910, 108 S.Ct. 1596], the court held that "where a non-debtor's interest in property is intertwined . . . with that of a bankrupt debtor [and] [i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt[cy] estate, then such action should be barred by the automatic stay." (835 F.2d at p. 431.) The court thus concluded that the bankruptcy court validly stayed a landlord's action to terminate the lease of the debtor restaurant's lessor, as the debtor's sublease would thereby be destroyed, and with it, the debtor's capacity to reorganize and continue its business. (*Ibid.*)

*In re Cardinal Industries, Inc.* (Bkrtcy S.D. Ohio 1989) 109 B.R. 748, was a case similar in significant respects to the one before us. Cardinal Industries, Inc., and its affiliate Cardinal Industries of Florida, Inc., jointly applied

for relief under chapter 11 of the Bankruptcy Code. The two debtors were the managing general partners of approximately 1,000 general partnerships, many of which were in default to various lenders. (109 B.R. at pp. 749-750.) On motion by the debtors, the bankruptcy court enjoined the Federal Home Loan Mortgage Corporation from proceeding with foreclosure sales of certain real property belonging to five of the partnerships. (*Id.* at pp. 750, 755.) The court concluded it had the authority under chapter 11 to enjoin actions against the partnerships, where such action threatened to seriously impair the debtor's reorganizational efforts. The court stated, "If every nuance of the entity theory is enforced in the context of these cases, the Court believes these Debtors effectively have no Chapter 11 remedy." (109 B.R. at pp. 750-751; cf. *In re Stadium Management Corp.* (D.Mass. 1988) 95 B.R. 264, 266, 270 [bankruptcy court had jurisdiction to enjoin sale of property of debtor's subsidiary where such injunction was "necessary for an effective reorganization" of the debtor].)

*A.H. Robins Co., Inc., supra, 48th Street Steakhouse, supra,* and *Cardinal Industries, supra,* were decided under the revised Bankruptcy Code, adopted as the 1978 Bankruptcy Reform Act, which enlarged the jurisdiction of the bankruptcy courts to include jurisdiction over all proceedings "arising in or related to cases under Title 11." (28 U.S.C. §§ 157, 1334; *In re Town & Country Home Nursing Services, Inc.* (9th Cir. 1991) 963 F.2d 1146, 1155; *A.H. Robins Co., Inc.* v. *Piccinin, supra,* 788 F.2d at p. 1002.) ▮ "Related to" has been very broadly defined. " 'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " (*In re Town & Country Home Nursing Services, Inc, supra,* 963 F.2d at p. 1155; *Pacor, Inc.* v. *Higgins* (3d Cir. 1984) 743 F.2d 984, 994.) However, even under the narrower powers established under the old Bankruptcy Act, the courts held that a bankruptcy court had the authority to assert jurisdiction over assets of nondebtor third parties and to enjoin actions affecting such assets, if such actions would frustrate the ability of the reorganization court to reorganize the debtor or make it impossible to proceed with the plan of reorganization. (See, e.g., *In re Equity Funding Corporation of America, supra,* 396 F.Supp. 1266, 1271; *In re Imperial "400" National, Inc.* (3d Cir. 1970) 429 F.2d 671, 677; *Petition of Portland Electric Power Co.* (D.Ore. 1943) 97 F.Supp. 877, 880-882; *In re International Power Securities Corporation* (3d Cir. 1948) 170 F.2d 399, 404-405.)

As we have observed, the purpose of the federal bankruptcy law is to place the property of the debtor, wherever found, under the control of the court for equal distribution among the creditors. (*Straton* v. *New, supra,* 283

U.S. at pp. 320-321 [75 L.Ed at pp. 1086-1087]; *Manter* v. *Howard, supra,* 94 Cal.App.2d at p. 408.) To give effect to this purpose, the federal courts, considering the reach of federal bankruptcy jurisdiction, have found it appropriate that bankruptcy courts have jurisdiction over the property of nondebtor third parties where the exercise of such jurisdiction is reasonably necessary to promote a workable reorganization of the debtor.

The purpose of section 1010 and following are similar, with the additional and more urgent purpose of protecting an insurance company's policyholders, as well as its creditors, by preventing dissipation of the company's assets when it is found by the Commissioner to be in a hazardous condition. (*Webster* v. *Superior Court, supra,* 46 Cal.3d at pp. 344-345; *Financial Indem. Co.* v. *Superior Court, supra,* 45 Cal.2d at pp. 402-404.) As we have also observed, the business of insurance is affected with a strong public interest, and the state thus has a particularly vital interest in the liquidation or reorganization of such a business. (*Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* 10 Cal.2d at p. 329; *Mitchell* v. *Taylor, supra,* 3 Cal.2d at p. 219; accord, *German Alliance Ins. Co.* v. *Lewis, supra,* 233 U.S. at pp. 412-413 [58 L.Ed. at p. 1022].)

 This being the case, the jurisdiction of a state court overseeing an insurance insolvency cannot, in reason, be any less comprehensive than that of a bankruptcy court in similar circumstances. State courts overseeing the reorganization of insolvent insurance companies must have equally broad jurisdiction where it is necessary to assure the continued operation of businesses which are so affected with the public interest.

Indeed, two other state courts have recently so held. (*Matter of Mut. Ben. Life Ins. Co.* (1992) 258 N.J.Super. 356 [609 A.2d 768]; and *Green* v. *Champion Ins. Co.* (La. Ct. App. 1991) 577 So.2d 249.) In *Mutual Benefit Life,* the New Jersey Supreme Court determined that a New Jersey court, overseeing the insolvency of an insurer, had authority to enjoin certain bond trustees from foreclosing on real estate projects in which the insurer owned partnership interests, regardless of whether the insurer had direct ownership interest in the properties where: (1) investment in the properties was a substantial part of the insurer's business, (2) any judgment against the properties would effectively be a judgment against the insurer, impairing its potential for rehabilitation and (3) there was a strong public interest in protecting the insurer's policyholders, who, unlike the bondholders, took no conscious risk when they purchased life insurance from the insurer. (609 A.2d at pp. 779-780.) In *Green,* the Louisiana court held that a court overseeing the insolvency of an insurance company could validly assert jurisdiction over the assets of affiliated companies where the insurer and the

affiliated companies, although formally distinct entities, constituted in practice a "single business enterprise." (*Green* v. *Champion Ins. Co.*, *supra*, 577 So.2d at pp. 256, 259-260.)

The reasoning of these cases is clearly applicable to the issues presented here. As a substantial part of its business, ELIC formed and participated in general and limited partnerships, such as the Signature Partnerships. These entities were formed and operated for the purpose of investing ELIC's premium dollars in various real estate ventures. Moreover, ELIC had substantial investments in these entities—approximately $650 million, or slightly over 10 percent of its total assets of $6 billion. Approximately 10 percent of the total amount which ELIC invested in real estate through partnerships and other entities, or approximately $65.6 million was invested in the Signature Partnerships, and ELIC's interest in those partnerships was 92 percent.

Such facts support two important conclusions. First, there was an identity of interest between ELIC and the Signature Partnerships which justified the trial court's assertion of in rem jurisdiction over partnership assets as well as an injunction prohibiting suits in other forums affecting such assets. Morgan Stanley's action against the Signature Partnerships was, in effect, an action against ELIC. Second, if the assets of the real estate investment entities were dissipated by litigation with partnership creditors, then there would be a negative impact upon the ability of the Commissioner to effect the reorganization and rehabilitation of ELIC. Under such circumstances, the Commissioner's position is neither "arbitrary" nor "improperly discriminatory" and is without question reasonably related to the public interest.

c. *Federal Law Does Not Preempt the State Court From Assuming Jurisdiction Over a Controversy Involving the Signature Partnerships, Although They Are Not Themselves Involved in the Business of Insurance.*

 Morgan Stanley, citing *International Shoe Company* v. *Pinkus, supra*, 278 U.S. 261 in support of its second argument, contends that federal law preempts any action in the state insolvency proceedings affecting the assets of the Signature Partnerships. Specifically, Morgan Stanley argues that (1) except where a contrary intent plainly appears, Congress has fully occupied the area of insolvency law thus preempting state regulation and (2) if a state purports to act in conflict with the federal bankruptcy laws, such action is void. In other words, real estate development entities, such as the Signature Partnerships, are not subject to state insolvency proceedings, because they are eligible debtors under the Bankruptcy Code, and the

exclusion of insurance companies from the governance of the Bankruptcy Code under 11 United States Code section 109(b)(2) excludes only insurance companies themselves—not affiliated, but legally separate, entities.[16] We reject this argument.

*In re Equity Funding Corporation of America, supra*, 396 F.Supp. 1266 (*Equity Funding*) was a case where the circumstances presented a virtual mirror image of the facts in this case. The issue presented was whether a bankruptcy court had jurisdiction to enjoin claims against an insurance company which was the subsidiary of a debtor which had filed a petition under chapter X of the former Bankruptcy Act. (396 F.Supp. at p. 1269.)

The district court recognized that federal law grants to the states plenary jurisdiction to regulate the business of insurance, including the supervision of the insolvency of insurance companies. (*Equity Funding, supra*, 396 F.Supp. at p. 1275.) It also acknowledged that section 4 of the former Bankruptcy Act (11 U.S.C. § 22) was enacted for the purpose of preserving the exclusive jurisdiction of the states over the liquidation or rehabilitation of insurance companies.[17] By preserving state liquidation proceedings, Congress intended to prevent bankruptcy or federal reorganization courts from interfering with comprehensive state insurance regulations and with the rights of insureds who are protected by such regulations. (*Ibid.*)

Nevertheless, in *Equity Funding*, the district court concluded that such plenary jurisdiction did not deprive the federal court of jurisdiction over controversies involving the assets of certain insurance companies, where such jurisdiction was necessary to effect a reorganization of the insurance companies' parent holding company, which was not itself an insurance company. (396 F.Supp. at p. 1275.) The court concluded that a federal court charged with adjudicating the fairness and feasibility of a reorganization plan under chapter X of the former Bankruptcy Act could, under some circumstances, validly assume jurisdiction over controversies involving subsidiaries of the debtor, even if such subsidiaries were insurance companies. (396 F.Supp. at p. 1275.)

Under the facts of the *Equity Funding* case, the court determined it could validly assume jurisdiction to adjudicate controversies involving Bankers

---

[16]Although Morgan Stanley cites a number of federal cases in addition to *International Shoe*, they provide no support for its position. In none of the cases cited by Morgan Stanley is state insolvency jurisdiction asserted over a legally distinct entity under the circumstances presented here; that is, where (1) the entity has an identity of interest with an insolvent insurance company, or other entity subject to state insolvency jurisdiction and (2) state jurisdiction over the entity's assets was reasonably necessary for a successful rehabilitation of the insolvent.

[17]As does present 11 United States Code section 109(b)(2), former 11 United States Code section 22 excluded insurance companies from coverage under federal bankruptcy laws.

**522**

National Life Insurance Company, which was a subsidiary of Equity Funding. The court first found that an identity of interest existed between Equity Funding and Bankers Life, so that an adjudication of claims against it was necessary to accomplish the purposes of federal bankruptcy jurisdiction with respect to Equity Funding. (396 F.Supp. at pp. 1270-1274.)[18] In addition, the court found such adjudication *would not interfere* with state liquidation proceedings. (396 F.Supp. at pp. 1274-1275.)[19]

 The present action is properly resolved in the state court for similar, indeed, more persuasive reasons. As we have observed, the exercise by the trial court of jurisdiction over the assets at issue in Morgan Stanley's federal action is reasonably necessary to a successful rehabilitation of ELIC. Further, such assertion of jurisdiction *would not interfere with federal bankruptcy proceedings* affecting the Signature Partnerships, as no such proceedings are pending. Nor is there any reason to believe the state court's exercise of in rem jurisdiction over partnership assets would interfere with any compelling federal purpose. ██ ██ ██ Indeed, the federal court which otherwise would have had jurisdiction to adjudicate Morgan Stanley's claim deferred to the state court's assertion of such jurisdiction.[20]

---

[18]Morgan Stanley contends *Equity Funding* is distinguishable from the present case, because this case does not contain the four "exceptional facts," upon which the *Equity Funding* court relied in determining that the bankruptcy court could exercise jurisdiction over the assets of Bankers Life, without regard to its separate corporate existence. The "exceptional facts" relied upon were: (1) the fraudulent scheme which caused Equity Funding's insolvency was also the basis of the claims against Bankers Life, (2) the claimants against Bankers Life did not rely upon its separate corporate existence, (3) Equity Funding's principal assets consisted of its stock in Bankers Life and other subsidiaries and (4) the claims to be enjoined represented a substantial portion of Equity Funding's value and raised a serious threat to the reorganization. (396 F.Supp. at pp. 1270-1271.)

It may or may not be true that ELIC's real estate investments were the cause of its insolvency and Morgan Stanley may have relied upon the Signature Partnerships' status as separate entities. However, even accepting these propositions arguendo, we still do not find such circumstances determinative. We are persuaded by the reasoning of *A. H. Robins, Inc.* v. *Piccinin, supra*, 788 F.2d 994, *Matter of Mutual Benefit Life Ins. Co., supra*, 609 A.2d 768, and other cases cited in this opinion, that a sufficient basis exists for a bankruptcy court or state insolvency court to exercise jurisdiction over assets of a third party, where there is both (1) an identity of interest between the insolvent or debtor in bankruptcy and the third party and (2) a public interest favoring reorganization or rehabilitation of the insolvent or debtor. The requisite identity of interest can be established where the insolvent or debtor has a significant portion of its assets invested in the third party, and the third party is substantially controlled by the insolvent or debtor. Clearly, these circumstances exist in the present case.

[19]No such interference could exist for two reasons: (1) there were no pending state insolvency proceedings involving Bankers Life and (2) the proceedings before the *Equity Funding* court did not involve a bankruptcy adjudication of Bankers Life itself.

[20]The district court's acknowledgment of state court jurisdiction in this case is in accord with well established federal authority in like cases. Early in the history of our federal system, a general rule was established that state and federal courts will not interfere with or restrain

## Conclusion

In sum, we conclude that an identity of interest exists between ELIC and the Signature Partnerships which justifies the exercise of jurisdiction by the trial court over assets that are nominally partnership property. Federal law does not prevent the trial court from exercising jurisdiction over the contested assets, although they are formally held by an entity that would not be subject to state insolvency proceedings but for its identity of interest with ELIC. Finally, the exercise of jurisdiction by the trial court over assets of partnerships with which ELIC had an identity of interest is reasonably necessary to promote the rehabilitation of ELIC. Thus, the trial court properly asserted in rem jurisdiction over the assets of the Signature Partnerships in order (1) to enjoin actions affecting those assets under section 1020 and (2) hereafter to adjudicate Morgan Stanley's claim to those assets under section 1058.

## Disposition

The court's order of March 19, 1992 is affirmed. Costs are awarded to the Commissioner.

Klein, P. J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 1993.

---

each other's proceedings. (*Donovan* v. *Dallas* (1964) 377 U.S. 408, 412 [12 L.Ed. 2d 409, 413, 84 S.Ct. 1579], citing *M'Kim* v. *Vorhees* (1812) 11 U.S. (7 Cranch) 279, 281 [3 L.Ed. 342, 343] and *Diggs* v. *Wolcott* (1807) 8 U.S. (4 Cranch) 179, 180 [2 L.Ed. 587, 588].) However, an exception is made where one court or the other has custody of property, that is, where the proceedings are in rem or quasi in rem. In such a case, the state or federal court first taking custody of the property has exclusive jurisdiction to proceed. (*Donovan* v. *Dallas*, *supra*, 377 U.S. at p. 412; *Princess Lida* v. *Thompson* (1939) 305 U.S. 456, 466 [83 L.Ed. 285, 291, 59 S.Ct. 275]; *Safeway Trails, Inc.* v. *Stuyvesant Insurance Co.*, *supra*, 211 F.Supp. at p. 237.)